No. 21-3371

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| SCOTT TROOGSTAD, et al., | ) | Appeal from the United States |
| | ) | District Court for the Northern |
| Plaintiffs-Appellants, | ) | District of Illinois, Eastern Division |
| | ) | |
| v. | ) | No. 1:21-cv-05600 |
| | ) | |
| CITY OF CHICAGO and JAY | ) | |
| ROBERT PRITZKER, Governor, | ) | The Honorable |
| | ) | JOHN Z. LEE, |
| Defendants-Appellees. | ) | Judge Presiding. |

**(FULL CAPTION ON NEXT PAGE)**

**BRIEF OF DEFENDANT-APPELLEE
GOVERNOR JAY ROBERT PRITZKER**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for Defendant-Appellee
Governor Jay Robert Pritzker

**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2090 (office)
(773) 590-7075 (cell)
Frank.Bieszczat@ilag.gov

| | |
|---|---|
| SCOTT TROOGSTAD, MARCUS HARRIS, GARY DUSZAK, TIMOTHY SERBIN, RAUL DE LEON, JOHN CUNNINGHAM, KENNETH BREZINA, MARZENA SEMRAU, MICHELE GRABER, JOHN KNIGHT, MICHAEL ZACH, ELVIS PEREZ, NICHOLAS FORTUNA, MEGHAN MICHAELSEN, JAMES WALSH, JEFFREY SUTTER, JENNIFER KARABOYAS, JAMES DUIGNAN, NICK PANTALEO, STEPHEN HODO, DAVID MARTIN, DANIEL RIEGER, KELLY JOINER, JULIO SANCHEZ, JR., ANGELA BANDSTRA, PHILIP MARX, JOSEPH FORCHIONE, MARK ABRATANSKI, RICH CLEMENS, ROBERT TEBBENS, KRYSTAL KRANZ, GRANT VOSBURGH, IRENE RES, MATT PALLER, BRIAN BRANTLEY, DANIEL KAIRIS, ANTHONY ZUMARAS, RICHARD LOUZON, FELIX SERRANO, LUIS QUINONES, ROBERT SKALSKI, RYAN KELLY, ROBERTO CORONADO, EDWARD SANTIAGO, MICHELLE MAXWELL, BRENDAN BERRY, PAUL O'CONNOR, WENDY LUCIANO, JULIAN SANTOS, STEVE ANDOLINO, JOSEPH CUDAR, MICHAEL OUELLETTE, ROBERT STOPKA, CHRIS GRANDE, FLETCHER PRESTIDGE, COLLIN DUSZAK, THOMAS FLAVIN, SETH MARTINEZ, MICHELE MARTINEZ, PHILIP MOCKLER, DANIEL BAUMGARTNER, SCOTT CHIBE, EMILY PECORARO, ANTHONY PECORARO, CHRISTOPHER ESTHERHAMMER-FIC, SANDRA CHLEBOWICZ, CHRIS KING, JOHN DARDANES, DAWN HEDLUND, DAVID LEON, VICTOR MARTIN, FRANK PHEE, ROBERT MORRIS, NICOLAS MINGHETTINO, MICHAEL CANNON, NICHOLAS SMITH, ROBERT THOMPSON, WILLIAM HURLEY, RYAN FRANZEN, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1:21-cv-05600 |

DANIEL KRANZ, JAMES SPALLA, STEVEN DORICH, ROY ANDERSON, JR., DAVID MUELLER, MICHAEL RICHIED, WESLEY SIENKIEWICZ, CLINT RIVERA, KEVIN FERGUSON, JEFFREY KING, ARLETT PAYNE, KELLEE SIMZ, SCOTT ROONEY, HEATHER SCHERR, BERNARD CONSIDINE, LEAH LAFEMINA ESCALANTE, STEPHEN COYNE, REBIA BRADLEY, TRANG NGUYEN, GARY HORKAVY, JAIME QUEZADA, THOMAS SERBIN, RAUL MOSQUEDA, RAYMOND WILKE, MICHAEL MALLOY, STEVEN PALUCK, BRET LANDIS, JOHN HERZOG, JOHN BORNER, MICHAEL DAHL, PABLO DELGADO, SHELTON DAVIS, DANIEL KEONIG, JANET CONTURSI, MATT WIECLAWEK, ANTHONY BAGGETT, MICHAEL CRIEL, MATTHEW JOSEPH PUSATERI, JOSE A. PEREZ, THOMAS TO. MORRIS DANIEL McDERMOTT, MITCHELL FIGUEROA, ADAM SAWYER, JOANN IMPARATO, JOHN MULLANEY, MICHAEL REPEL, JAMES RAPPOLD, MONO KACHATORIAN, MATTHEW A. BALANDES, SAAR BRUCE SHAAR, DUHAMEL RENFORT, ANTHONY MARTIN MAGGIO, CHRISTOPHER J. KAHR, ERIK GOFF, TIMOTHY MALLOY, and WILLIAM PARKER, individually and on behalf of similarly situated employees of CITY OF CHICAGO,

        Plaintiffs-Appellants,

      v.

CITY OF CHICAGO and JAY ROBERT PRITZKER, Governor,

        Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

The Honorable
JOHN Z. LEE,
Judge Presiding.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES.......................................................................iii

JURISDICTIONAL STATEMENT................................................................1

ISSUE PRESENTED FOR REVIEW ...........................................................3

STATEMENT OF THE CASE .....................................................................4

    Factual Background ...........................................................................4

    Procedural Background.......................................................................7

SUMMARY OF ARGUMENT ..................................................................14

ARGUMENT .........................................................................................15

    I.     Plaintiffs had the burden to clearly show that they were entitled to the extraordinary remedy of a preliminary injunction. ........................................15

    II.    Plaintiffs failed to make a strong showing of a likelihood of success on the merits of their claims. ...................................................16

       A.  Plaintiffs are unlikely to succeed on the merits of a substantive due process claim.....................................................16

          1.   EO2021-22 is subject to rational basis review. ...........................17

          2.   EO2021-22 satisfies rational basis review. ................................21

       B.  Plaintiffs are unlikely to succeed on the merits of a procedural due process claim. ..........................................................30

    III.   Plaintiffs failed to establish that they would suffer irreparable harm without an injunction or lack an adequate remedy at law. ............................32

    IV.   Plaintiffs have forfeited any argument about the balance of harms by not presenting it in their opening brief on appeal and, regardless, the district court did not abuse its discretion by finding that the balance weighed against preliminary relief. .....................................................33

CONCLUSION ...................................................................................................... 36

**Page(s)**

**Cases**

*Abbott Laboratories v. Mead Johnson & Co.,*
   971 F.2d 6 (7th Cir. 1992) ...................................................................... 34

*Adams v. City of Chi.,*
   135 F.3d 1150 (7th Cir. 1998) .............................................................. 33

*Agostini v. Felton,*
   521 U.S. 203, (1997) ..................................................................... 19, 21

*Alarm Detection Sys. v. Orland Fire Prot. Dist.,*
   929 F.3d 865 (7th Cir. 2019) .................................................................. 25

*Bennett v. Council 31 of AFSCME,*
   992 F.3d 724 (7th Cir. 2021) .................................................................. 19

*Biden v. Missouri,*
   142 S. Ct. 647 (2022) ............................................................... *passim*

*Calvary Chapel Dayton Valley v. Sisolak,*
   140 S. Ct. 2603 (2020) ............................................................................ 20

*Campos v. Cook Cnty.,*
   932 F.3d 972 (7th Cir. 2019) ........................................................... 17, 21

*Cassell v. Snyders,*
   990 F.3d 539 (7th Cir. 2021) .................................................... 15, 25, 33

*Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.,*
   741 F.3d 769 (7th Cir. 2013) .................................................................. 21

*Chrysafis v. Marks,*
   141 S. Ct. 2482 (2021) ............................................................................ 20

*Cornucopia Inst. v. U.S. Dep't of Agric.,*
   560 F.3d 673 (7th Cir. 2009) .................................................................. 33

*Courthouse News Serv. v. Brown,*
   908 F.3d 1063 (7th Cir. 2018) ................................................................ 16

*Cruzan v. Dir., Mo. Dep't of Health*,
497 U.S. 261 (1990) .................................................................................20

*Elrod v. Burns*,
427 U.S. 347 (1976) .................................................................................32

*FDA v. Am. Coll. of Obstetricians & Gynecologists*,
141 S. Ct. 10 (2020) .................................................................................20

*Fox Fire Tavern, LLC v. Pritzker*,
2020 IL App (2d) 200623 .........................................................................31

*FTC v. Advocate Health Care Network*,
841 F.3d 460 (7th Cir. 2016) ...................................................................16

*GEFT Outdoors, LLC v. City of Westfield*,
922 F.3d 357 (7th Cir. 2019) ...........................................................16, 34

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*,
549 F.3d 1079 (7th Cir. 2008) .................................................................32

*Goodpaster v. City of Indianapolis*,
736 F.3d 1060 (7th Cir. 2013) .................................................................22

*Heller v. Doe*,
509 U.S. 312 (1993) .................................................................................22

*Ill. Republican Party v. Pritzker*,
973 F.3d 760 (7th Cir. 2020) ...........................................................15, 19

*Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*,
603 F.3d 365 (7th Cir. 2010) .....................................................................2

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ........................................................................8, 17, 18

*JL Props. Grp. B, LLC v. Pritzker*,
2021 IL App (3d) 200305 .........................................................................31

*Joelner v. Vill. of Wash. Park*,
378 F.3d 613 (7th Cir. 2004) ...................................................................32

*Katz-Crank v. Haskett*,
843 F.3d 641 (7th Cir. 2016) .............................................................30, 31

*Klaassen v. Trs. of Ind. Univ.*,
  7 F.4th 592 (7th Cir. 2021)..............................................................*passim*

*Knutson v. Vill. of Lakemoor*,
  932 F.3d 572 (7th Cir. 2019) ......................................................... 30

*Landers v. Pritzker*,
  2020 IL App (4th) 200356-U .......................................................... 31

*Lopez Ramos v. Barr*,
  942 F.3d 376 (7th Cir. 2019) ......................................................... 22

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...................................................................... 30

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ...................................................................... 15

*Mercado v. Dart*,
  604 F.3d 360 (7th Cir. 2010) ........................................................... 1

*Minerva Dairy, Inc. v. Harsdorf*,
  905 F.3d 1047 (7th Cir. 2018) ....................................................25-26

*Monarch Bev. Co. v. Cook*,
  861 F.3d 678 (7th Cir. 2017) .....................................................22, 28

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
  142 S. Ct. 661 (2022) ..........................................................28, 29, 35

*Orr v. Schicker*,
  953 F.3d 490 (7th Cir. 2020) ......................................................... 32

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ........................................................................ 30

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*,
  699 F.3d 962 (7th Cir. 2012) ......................................................... 34

*Planned Parenthood v. Casey*,
  505 U.S. 833 (1992) ..............................................................8, 19, 20

*Platt v. Brown*,
  872 F.3d 848 (7th Cir. 2017) .....................................................17, 23

*Roe v. Wade,*
    410 U.S. 113 (1973) ...............................................................8, 19, 20

*Roman Catholic Diocese v. Cuomo,*
    141 S. Ct. 63 (2020) .............................................................18, 20, 21

*Ruble v. Tate-Nadeau,*
    2021 IL App (4th) 200641-U ........................................................31

*S. Bay United Pentecostal Church v. Newsom,*
    140 S. Ct. 1613 (2020) ...................................................................20

*Srail v. Vill. of Lisle,*
    588 F.3d 940 (7th Cir. 2009) .........................................................22

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,*
    919 F.3d 1003 (7th Cir. 2019) ..................................................22, 29

*Tully v. Okeson,*
    977 F.3d 608 (7th Cir. 2020) .........................................................16

*Turnell v. Centimark Corp.,*
    796 F.3d 656 (7th Cir. 2015) ......................................................33-34

*Valencia v. City of Springfield,*
    883 F.3d 959 (7th Cir. 2018) .........................................................16

*Valenti v. Lawson,*
    889 F.3d 427 (7th Cir. 2018) .........................................................22

*Webster v. CDI Ind., LLC,*
    917 F.3d 574 (7th Cir. 2019) .........................................................34

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...........................................................................15

*Wis. Dep't of Corr. v. Schacht,*
    524 U.S. 381 (1998) .........................................................................1

**Statutes**

28 U.S.C. § 1292(a)(1) ..........................................................................2

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367 ...................................................................................................... 1

28 U.S.C. § 2107(a) ................................................................................................... 2

42 U.S.C. § 1983 ....................................................................................................... 1

20 ILCS 3305/1 *et seq.* ........................................................................................ 1, 4

20 ILCS 3305/7 ......................................................................................................... 5

20 ILCS 3305/7(8) ................................................................................................... 31

745 ILCS 70/1 *et seq.* .......................................................................................... 1, 8

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ........................................................................................ 2

7th Cir. R. 28(b) ........................................................................................................ 1

Annelies Wilder-Smith, *What is the vaccine effect on reducing transmission in the context of the SARS-CoV-2 delta variant?*, THE LANCET. INFECTIOUS DISEASES, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8554481/ ................................ 26, 27

Centers for Disease Control and Prevention, *COVID-19: Frequently Asked Questions (Spread),* https://bit.ly/3hXnvZr .................................................................. 4

Centers for Disease Control and Prevention, *Effectiveness of a Third Dose of mRNA Vaccines Against COVID-19-Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance – VISION Network, 10 States, August 2021-January 2022*, https://bit.ly/3IXvC30 ............................................................... 27

S.V. Subramanian & Akhil Kumar, *Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States*, 36 EUROPEAN JOURNAL OF EPIDEMIOLOGY, 1237-40, https://link.springer.com/content/pdf/10.1007/s10654-021-00808-7.pdf ................... 26

Tommaso Celeste Bulfone, et al., *Outdoor Transmission of SARS-CoV-2 and Other Respiratory Viruses: A Systematic Review*, 223 JOURNAL OF INFECTIOUS DISEASES, 550-61, https://bit.ly/3GiaSBt. ...................................................................... 4

World Health Organization, *Coronavirus disease (COVID-19): How is it transmitted?*, https://bit.ly/3IqWHf4. ...........................................................................4

**JURISDICTIONAL STATEMENT**

Plaintiffs-Appellants' jurisdictional statement is not complete and correct. State Defendant-Appellee Governor Jay Robert Pritzker ("Governor") provides this statement as required by 7th Cir. R. 28(b).

Plaintiffs filed a complaint in the district court based on 42 U.S.C. § 1983, claiming that the Governor and the City of Chicago ("City") violated the First and Fourteenth Amendments to the United States Constitution and the Illinois Health Care Right of Conscience Act, 745 ILCS 70/1 *et seq.* Doc. 1.[1] They also sought a declaration that the Governor exceeded his authority under Illinois Emergency Management Agency Act ("Illinois Emergency Act"), 20 ILCS 3305/1 *et seq.*, and injunctive relief. *Id.* at 30-31.

The district court had subject matter jurisdiction over plaintiffs' federal constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim against the City under 28 U.S.C. § 1367. But, as explained in section II.B. of the Argument in this brief, plaintiffs' state claims against the Governor were barred by the Eleventh Amendment to the United States Constitution, and to the extent that the Eleventh Amendment affects a court's subject matter jurisdiction, the district court lacked jurisdiction over those claims. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (United States Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"); *compare Mercado v. Dart*, 604 F.3d 360, 361 (7th Cir. 2010) ("eleventh amendment

---

[1] The district court's docket is cited as "Doc. __," plaintiffs' opening brief on appeal is cited as "AT Br. __," and the appendix to that brief is cited as "A__."

limits the jurisdiction of federal courts") *with Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) ("The Eleventh Amendment is unusual in that it does not strictly involve subject matter jurisdiction[.]").

On December 21, 2021, the district court denied plaintiffs' request for a preliminary injunction. Doc. 41. On December 22, 2021, plaintiffs filed a notice of appeal. Doc. 42. Plaintiffs' notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the district court's denial of their preliminary injunction motion. This court has jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(a)(1).

## ISSUE PRESENTED FOR REVIEW

Whether the district court acted within its discretion by denying plaintiffs' request for a preliminary injunction when they failed to establish any of the factors necessary to warrant such extraordinary relief.

**STATEMENT OF THE CASE**

**Factual Background**

Covid-19 is an acute respiratory illness that has caused a global pandemic that continues to infect and claim the lives of thousands of individuals across the State of Illinois. Doc. 14-1 at 3; Doc. 14-2 at 3-4. The virus spreads through the transfer of respiratory droplets and other small particles from infected persons to people around them, such as those that are emitted when a person coughs, sneezes, sings, or talks. Doc. 14-1 at 4; Doc. 14-2 at 3.[2] A person can acquire and spread Covid-19 without experiencing any symptoms, and those people who do experience symptoms are most infectious just before symptoms appear. Doc. 14-1 at 4; Doc. 14-2 at 3-4.[3] Covid-19 is spread far more easily indoors than outdoors, and the longer someone is in contact with an infected person, the more likely that person is to acquire the virus. Doc. 14-1 at 4.[4] On January 30, 2020, the World Health Organization declared a public health emergency of international concern over the global outbreak of Covid-19 and, on March 11, 2020, elevated Covid-19 to a pandemic. *Id.* at 3.

The Illinois Emergency Management Agency Act ("Illinois Emergency Act"), 20 ILCS 3305/1 *et seq.*, grants the Governor the authority to proclaim that a disaster

---

[2] *See* Centers for Disease Control and Prevention, *COVID-19: Frequently Asked Questions (Spread),* https://bit.ly/3hXnvZr (all websites last visited Feb. 22, 2022).

[3] *See* World Health Organization, *Coronavirus disease (COVID-19): How is it transmitted?*, https://bit.ly/3IqWHf4.

[4] *See* Tommaso Celeste Bulfone, et al., *Outdoor Transmission of SARS-CoV-2 and Other Respiratory Viruses: A Systematic Review*, 223 JOURNAL OF INFECTIOUS DISEASES, 550-61, https://bit.ly/3GiaSBt.

exists and to exercise numerous emergency powers to secure public safety, *id.* § 7.

Beginning in March 2020, the Governor issued a series of executive orders pursuant to his authority under the Illinois Constitution and Illinois Emergency Act that have implemented measures to combat the spread of Covid-19 and protect public health.[5] After issuing stay-at-home orders in March and April 2020, *see* Ill. Exec. Order ("EO") 2020-10, EO2020-18, EO2020-32,[6] the Governor initiated the Restore Illinois Plan in May 2020.[7]  Pursuant to that plan, various restrictions on gatherings, travel, health care, education, childcare, outdoor recreation, and businesses were gradually lifted as the State progressed from Phase 1 (Rapid Spread) to Phase 5 (Illinois Restored).[8]

Throughout, the Governor continued to issue executive orders that reflected changing conditions and responded to new challenges as the number of new cases and hospitalizations oscillated, vaccines became widely available, and new strains of the virus emerged.[9]  For example, the Governor issued EO2020-43 in June 2020, which cited the growing consensus that face coverings were an effective way to slow the spread of the disease and required people to wear face coverings when they were in public and unable to keep a six-foot distance between themselves and others.

---

[5]  *See* Executive & Administrative Orders, https://bit.ly/3lMY265.

[6]  All executive orders referenced herein are available at https://bit.ly/3lMY265.

[7]  *See* Restore Illinois, https://bit.ly/3zwzZNG.

[8]  *See id.*

[9]  *See* Executive & Administrative Orders, https://bit.ly/3lMY265.

EO2020-43 at 1-2.  Then, on May 17, 2021, as vaccines proved effective at limiting the spread and severity of Covid-19 and became widely available, the Governor issued EO2021-10, which lifted the requirement to wear face coverings for those people who had been vaccinated, while maintaining it for those who had not, consistent with the Centers for Disease Control and Prevention's updated recommendations.  EO2021-10 at 1-2.  That day, Illinois reported 946 new and probable cases, the seven-day positivity rate stood at 2.4%, and 1,512 patients were hospitalized with Covid-19.[10]

As the summer wore on, the Delta variant became more prevalent, especially among children (who could not yet be vaccinated), and the number of new cases and hospitalizations rose to levels not seen in months.  *See* EO2021-18, EO2021-20.  Roughly 90,000 Illinoisans contracted Covid-19 in August 2021, as the number of new cases grew each week.[11]  And by the end of the month, regional positivity rates ranged from 4.2% to 10.8%, and 2,240 patients were hospitalized with the virus.[12]

In August and September 2021, the Governor issued a number of executive orders that responded to the challenges posed by the escalating spread of the Delta variant, as well as the onset of the new school year.  *See* EO2021-18, EO2021-20, EO2021-22, EO2021-24, EO2021-25.  On September 3, 2021, the Governor issued EO2021-22, which plaintiffs challenge here.  *See* Doc. 1-1.

---

[10]  Ill. Dep't of Pub. Health, *Recent News* (May 17, 2021), https://bit.ly/3scaXS6.

[11]  *See* Ill. Dep't of Pub. Health, *Recent News* (Aug. 6, 13, 20, 27, 2021), https://bit.ly/3HmjnwK; https://bit.ly/3scAw5y; https://bit.ly/3s9lH3J; https://bit.ly/3ojOhya.

[12]  Ill. Dep't of Pub. Health, *Recent News* (Aug. 27, 2021), https://bit.ly/3ojOhya.

Among other things, EO2021-22 set vaccination and testing requirements for health care workers mandating that those individuals must either receive a vaccine or undergo weekly Covid-19 testing. *Id.* at 4-5. Specifically, it required all health care workers to receive at least the first dose of a two-dose vaccine by September 19, 2021, and then receive the second dose, if applicable, within 30 days. *Id.* at 4. Any health care worker who was not vaccinated by those deadlines had to take a weekly Covid-19 test. *Id.* at 4-5. Health care workers were expressly exempted from the vaccination requirement if a vaccine was medically contraindicated or if receiving one would require that person to violate or forgo a sincerely held religious belief, practice, or observance. *Id.* at 5. Exempted health care workers were required to comply with the weekly testing option. *Id.* In addition, health care facilities were required to "exclude . . . from the premises" any health care worker who did not comply with the vaccination or testing requirements. *Id.*

The City later issued its own Covid-19 policy requiring all City employees to either receive a vaccine or undergo twice-weekly testing by October 15, 2021. Doc. 18-1 at 17-20. The testing option was available only until December 31, 2021, after which all employees must be fully vaccinated unless they have obtained a medical or religious exemption. *Id.* at 17-19. Exempt personnel must instead undergo twice-weekly testing. *Id.* at 17.

**Procedural Background**

On October 21, 2021, plaintiffs, who are City employees, filed a complaint in the district court against the Governor and the City challenging the validity of

EO2021-22 and the City's policy.  Doc. 1.  Plaintiffs claimed that those mandates violated their Fourteenth Amendment rights to due process and equal protection.  *Id.* at 29.  Plaintiffs also claimed that the City violated the First Amendment by not granting them religious exemptions and that both defendants violated the Illinois Health Care Right of Conscience Act, while seeking declarations that the Governor exceeded his authority under the Illinois Emergency Act by issuing EO2021-22 and that the City's policy was not properly enacted.  *Id.* at 21-25, 29-31.  In support of those claims, plaintiffs alleged that the testing and vaccination requirements were not narrowly tailored and lacked a rational basis because they did not account for natural immunity derived from a prior infection and the number of new Covid-19 cases was, at that time, decreasing.  *Id.* at 17-20, 26-29.

That same day, plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction to bar defendants from enforcing EO2021-22 and the City's mandate.  Doc. 4.  Plaintiffs argued that they were likely to succeed on the merits of a substantive due process claim because the testing and vaccination requirements impacted fundamental rights to bodily autonomy, privacy, and to earn a living, and did not withstand strict scrutiny.  *Id.* at 5-9.  In doing so, plaintiffs claimed that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), was inapplicable because it had been undermined by later United States Supreme Court decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992).  *Id.* at 5-6.  Regardless, plaintiffs argued, the mandates could not satisfy any level of

constitutional scrutiny, including rational basis review, because they did not account for natural immunity and they were not issued earlier in the pandemic. *Id.* at 7-10.

Plaintiffs also asserted that they were likely to succeed on a procedural due process claim because "[t]he Governor exceeded his authority under Illinois law" by issuing EO2021-22 and the Mayor of Chicago unilaterally enacted the City's policy. *Id.* at 10-11. On their First Amendment claim, plaintiffs argued that the City would violate the Free Exercise Clause if it failed to approve religious exemptions while granting exemptions for other reasons or required a religious leader's signature to obtain an exemption. *Id.* at 11-13. Finally, plaintiffs argued that defendants violated the Illinois Health Care Right of Conscience Act, they would suffer irreparable harm without a preliminary injunction, and the balance of harms favored an injunction. *Id.* at 13-15.

Defendants filed responses arguing that plaintiffs failed to establish any of the elements required for preliminary relief. Docs. 14, 18. They submitted supporting declarations from Dr. Susan Casey Bleasdale, an infectious disease specialist and the Medical Director of Infection and Antimicrobial Stewardship at University of Illinois Hospital, Doc. 14-1; Dr. Arti Barnes, an infectious disease specialist and the Chief Medical Officer of the Illinois Department of Public Health, Doc. 14-2; and Dr. Allison Arwady, the Commissioner of the Chicago Department of Public Health, Doc. 18-1 at 2-9.

The Governor explained that EO2021-22 was issued in response to the rise in cases and hospitalizations associated with the Delta variant, including in children,

who could not yet be vaccinated.  Doc. 14 at 15-16, 25-26; Doc. 14-1 at 5-7; Doc. 14-2 at 4-5.  By that point, vaccines had proven safe and effective, and although they were somewhat less effective against the Delta variant than the Alpha variant, they were still highly effective against Delta, especially at preventing severe illness and death.  Doc. 14 at 12-15, 25-26; Doc. 14-1 at 5, 7-13; Doc. 14-2 at 5-10.  In addition, testing was an effective tool for preventing Covid-19's spread, as it could identify people who had the virus and were contagious before any symptoms appeared, and was especially necessary in the health care setting.  Doc. 14 at 25; Doc. 14-1 at 13.

Turning to the merits of plaintiffs' claims, defendants argued that plaintiffs were unlikely to succeed on a substantive due process claim because the mandates were subject to rational basis review and satisfied that standard.  Doc. 14 at 17-35; Doc. 18 at 12-20.  Defendants pointed out that *Jacobson* was still good law, as this court had confirmed in *Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021), and that rational basis review was therefore appropriate.  Doc. 14 at 18-24; Doc. 18 at 12-17.  The mandates, defendants continued, were rationally related to the legitimate governmental interest in protecting public health and, they noted, vaccine mandates had a strong historical pedigree.  Doc. 14 at 25-26; Doc. 18 at 17-20.  The Governor also emphasized that testing and vaccine requirements were especially important in the health care setting and that, while plaintiffs argued that natural immunity was superior to vaccine immunity, that assertion rested on two articles, one of which did not support that point and the other which was not peer-reviewed and was methodologically flawed.  Doc. 14 at 25-29.  Rather, the weight of authority

10

showed that vaccines were more effective than natural immunity and strengthened existing natural immunity, the degree of natural immunity depended on the severity of the initial infection, and vaccines reduced the severity of breakthrough infections. *Id.* at 25-30. And the evidence showed that Covid-19 vaccines were well-researched and safe and, for all these reasons, multiple other courts had upheld the validity of similar mandates. *Id.* at 30-34.

In addition, the Governor argued, plaintiffs' state claims, alleging that EO2021-22 violated the Illinois Health Care Right of Conscience Act and that the Governor exceeded his authority under the Illinois Emergency Act, were barred by the Eleventh Amendment. *Id.* at 39-42. To the extent that plaintiffs tried to frame their claim regarding the Illinois Emergency Act as one of federal procedural due process, they identified no procedural defect aside from the alleged violation of state law. *Id.* at 41. The City argued that the Mayor had authority to issue its policy, any dispute over that action was a matter of state labor law, and its policy was not subject to heightened scrutiny under the First Amendment. Doc. 18 at 20-24. The City also contended that the Illinois Health Care Right of Conscience Act was inapplicable and that its policy complied with that statute in any case. *Id.* at 25-28. All defendants further argued that plaintiffs would not suffer irreparable harm absent a preliminary injunction and did not lack an adequate remedy at law, and that the public interests served by maintaining the mandates during the litigation outweighed any potential harm to plaintiffs. Doc. 14 at 42-46; Doc. 18 at 28-30.

The district court denied plaintiffs' request for a TRO, concluding that they were unlikely to succeed on the merits of any of their claims and had not established the other elements for such relief. Doc. 35 (A2-33). As to substantive due process, the court determined that rational basis review was appropriate under *Jacobson* and *Klaassen* and that the mandates were rationally related to defendants' interests in protecting public health. *Id.* at 6-17 (A7-18).

Plaintiffs filed a supplemental brief in support of their request for a preliminary injunction arguing that recent studies had shown that vaccine efficacy diminished over time and that vaccines and natural immunity were equally effective at preventing the virus's spread. Doc. 32. Defendants responded that plaintiffs' cited studies did not support their arguments, while emphasizing that the mandates' objectives included reducing the severity of infections and that the existence of a scientific debate over the extent to which vaccines were superior to natural immunity was necessarily insufficient to satisfy plaintiffs' burden under rational basis review. Docs. 36, 37.

On December 21, 2021, the district court denied the preliminary injunction motion. Doc. 41 (A34-53). To begin, the court noted that plaintiffs had declined the opportunity to conduct discovery following the denial of a TRO and that its decision was based "on the factual record before it." Doc. 41 at 3-4 (A36-37). The court then concluded that plaintiffs were unlikely to succeed on a substantive due process claim. *Id.* at 5-11 (A38-44). It explained that rational basis review was appropriate under *Jacobson* and *Klaassen* and that the mandates were rationally related to defendants'

legitimate interests in protecting the public health. *Id.* at 6-11 (A39-44). The court stated that defendants presented more than enough evidence to demonstrate that the mandates were the product of rational policymaking and that, "even on the most generous reading of [plaintiffs'] evidence," they had merely shown the existence of a scientific debate over the comparable degree of protection provided by vaccines and natural immunity, which alone established that the mandates were neither arbitrary nor irrational. *Id.* at 9-10 (A42-43).

The district court also held that plaintiffs were unlikely to succeed on their procedural due process claim against the Governor because they failed to identify a due process violation aside from his purported failure to comply with state law, which presented a state claim that was barred by the Eleventh Amendment. *Id.* at 11-12 (A44-45). In addition, the court concluded that plaintiffs were unlikely to succeed on their other claims against the City and that any claim against the Governor under the Illinois Health Care Right of Conscience Act was barred by the Eleventh Amendment. *Id.* at 13-17 (A46-50). The court further stated that plaintiffs would not suffer irreparable harm without an injunction because they could be compensated by money damages and that the balance of harms weighed in favor of preserving the mandates. *Id.* at 17-19 (50-52). Plaintiffs appeal this interlocutory ruling. Doc. 42.

## SUMMARY OF ARGUMENT

This court should affirm the district court's denial of a preliminary injunction. Plaintiffs failed to satisfy any of the elements for preliminary relief, and the district court did not abuse its discretion by finding that an injunction was unwarranted.

Plaintiffs are unlikely to succeed on their substantive due process claim because EO2021-22 is subject to rational basis review and is rationally related to the Governor's valid interest in protecting public health during a pandemic. Plaintiffs' pitch for strict scrutiny is foreclosed by *Jacobson* and *Klaassen*, and their critiques of EO2021-22 fail to establish that it lacks a rational basis, especially in view of recent United States Supreme Court precedent affirming the rationality of a more stringent vaccine mandate. In addition, plaintiffs are unlikely to succeed on their procedural due process claim because it merely recasts a state claim regarding the scope of the Governor's statutory authority that, along with any claim under the Illinois Health Care Right of Conscience Act, is barred by the Eleventh Amendment and must be brought in state court. Plaintiffs have also failed to establish that they will suffer irreparable harm without an injunction or that they lack an adequate remedy at law. Finally, by not addressing the balance of harms in their opening brief, plaintiffs have forfeited any argument about that issue on appeal and, at the very least, provided no basis for concluding that the district court abused its discretion when assessing those equitable considerations.

**ARGUMENT**

**I.     Plaintiffs had the burden to clearly show that they were entitled to the extraordinary remedy of a preliminary injunction.**

"A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotations omitted). A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (internal quotations omitted); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

At the threshold, a party seeking a preliminary injunction must demonstrate a likelihood of success on the merits, and establish that it has no adequate remedy at law and will suffer irreparable harm without preliminary relief. *Cassell*, 990 F.3d at 544-45. To satisfy the likelihood of success element, a plaintiff must make a "strong" showing that it will succeed on its underlying claim, which will normally include "a demonstration of how the [plaintiff] proposes to prove key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020).

If those threshold factors are met, a court will proceed to the balancing phase of the analysis, where it balances the harms to the parties and the public interest if a preliminary injunction were granted or denied. *Cassell*, 990 F.3d at 545. Courts use a "sliding scale approach" when balancing the harms, meaning that the balance must weigh more heavily in the plaintiff's favor when it is less likely to win on the merits,

15

and vice versa.  *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019).  "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

This court reviews a district court's preliminary injunction ruling for an abuse of discretion, reviewing subsidiary legal issues *de novo* and factual findings for clear error.  *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020).  Although plaintiffs argue that all aspects of the district court's decision should be reviewed *de novo*, AT Br. 13, they overlook that the court's ultimate decision to deny the preliminary injunction is reviewed for an abuse of discretion, *see FTC v. Advocate Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016), and, in particular, that its assessment of the balance of harms is entitled to substantial deference, *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018).

## II.  Plaintiffs failed to make a strong showing of a likelihood of success on the merits of their claims.

### A.  Plaintiffs are unlikely to succeed on the merits of a substantive due process claim.

Plaintiffs cannot succeed on their substantive due process claim against the Governor because the testing and vaccination requirements in EO2021-22 are subject to rational basis review, and they satisfy that standard.  While plaintiffs insist that strict scrutiny applies, AT Br. 16-26, *Jacobson* and *Klaassen* foreclose that argument.  And plaintiffs' assertion that EO2021-22 lacks a rational basis, *see id.* at 25-26, is without merit, as is clear from the recent decision in *Biden v. Missouri*, 142 S. Ct. 647 (2022) (per curiam), where the Supreme Court held that a national vaccine mandate

governing facilities that receive Medicare and Medicaid funding, which did not include a testing option, was neither arbitrary nor capricious.

**1.   EO2021-22 is subject to rational basis review.**

The Fourteenth Amendment substantive due process doctrine has a "very limited" scope, which courts have been reluctant to expand any further. *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). Unless the challenged governmental action burdens a fundamental right, substantive due process requires only that the practice is "rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Platt v. Brown*, 872 F.3d 848, 852 (7th Cir. 2017).

In *Jacobson*, the Supreme Court upheld the constitutionality of a state law requiring compulsory vaccination during a smallpox epidemic under the Fourteenth Amendment, concluding that the law was a valid exercise of the State's police power to protect public health and safety. 197 U.S. at 24-39. As the Court explained, the individual liberty interests protected by the Constitution are not absolute, and are necessarily subject to reasonable restraints, "as the safety of the general public may demand." *Id.* at 26-29. To that end, the Court emphasized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," *id.* at 27, and that judicial intervention would be appropriate only if the challenged mandate was "arbitrary" or "[had] no real or substantial relation to the protection of the public health," *id.* at 28, 31. The Court concluded that the

vaccine requirement cleared that standard, noting the well-established use of similar mandates to protect the public health. *Id.* at 31-35.

In *Klaassen*, this court recognized that *Jacobson* applied what was, in effect, rational basis review, while holding that a university policy requiring all students to receive Covid-19 vaccines, with twice-weekly testing requirements for those with religious or medical exemptions, did not violate substantive due process. *See* 7 F.4th at 593; *see also Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("[a]lthough *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review"). Although the plaintiffs argued that rational basis review was insufficient to protect their rights, this court reminded that it "must apply the law established by the Supreme Court." *Klaassen*, 7 F.4th at 593. The court explained that, assuming the plaintiffs "have a right in bodily integrity," *Jacobson* showed that they did not have a fundamental right to refuse to be vaccinated, noting that "vaccination requirements, like other public-health measures, have been common in this nation." *Id.* The university's policy, the court continued, was less burdensome than the vaccine requirement in *Jacobson*, which applied to all adults without exception, because it provided for religious and medical exemptions and applied only to the university's students. *Id.* The court therefore concluded that the university did not violate substantive due process by choosing to employ a vaccine requirement to "help all students remain safe when learning." *Id.* at 593-94.

*Jacobson* and *Klaassen* thus establish that EO2021-22, which requires health care workers to either undergo weekly testing or receive a vaccine, does not burden a

fundamental right and is subject to rational basis review.  Plaintiffs, however, insist that they have a fundamental right to refuse that measure, arguing that *Jacobson* and *Klaassen* are not controlling.  *See* AT Br. 16-26.

Plaintiffs maintain that this court should not follow *Jacobson* because its reasoning has been undermined by later Supreme Court decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), which, in their view, have embraced a more expansive view of individual liberty.  AT Br. 16-18.  But plaintiffs do not contend that the Supreme Court has overruled *Jacobson*, *see id.* at 18, and, as this court recognized in *Klaassen*, "a court of appeals must apply the law established by the Supreme Court," 7 F.4th at 593.  Although plaintiffs fault this court for not discussing *Roe* and *Casey* in *Klaassen*, *see* AT Br. 22-23, any purported tension between the reasoning in *Jacobson* and those later decisions could provide no basis for departing from *Jacobson* because this court must follow directly applicable Supreme Court precedent.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions") (internal quotations omitted); *Bennett v. Council 31 of AFSCME*, 992 F.3d 724, 735 (7th Cir. 2021) (quoting *Agostini* while following directly applicable precedent).

Indeed, this court has continued to follow *Jacobson*, *see Ill. Republican Party*, 973 F.3d at 763-64, and the Supreme Court, while examining *Jacobson's* contours in

multiple recent rulings, has given no indication that *Jacobson* has been overruled or is obsolete, *see Chrysafis v. Marks*, 141 S. Ct. 2482 (2021); *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020); *FDA v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 10 (2020); *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020). This court therefore properly followed *Jacobson* because it is directly applicable, has not been overruled, and is still good law. The district court correctly did the same. *See* Doc. 41 at 6-7 (A39-40).

In any event, neither *Roe* nor *Casey* undermined *Jacobson*; on the contrary, they relied on *Jacobson* to explain that just as individual liberty interests are not absolute, the State's power to regulate them is not unlimited. *See Roe*, 410 U.S. at 154 (citing *Jacobson* for principle that privacy rights are not absolute); *Casey*, 505 U.S. at 857 (citing *Jacobson* for companion principle that State cannot burden individual liberty without justification).[13] Plaintiffs' assertion that the invocation of *Jacobson* "cannot simply end all reasonable inquiry and analysis," AT Br. 19, misses the mark because, as *Klaassen* demonstrated, *see* 7 F.4th at 593, *Jacobson* calls for judicial analysis in the form of rational basis review – the test that applies to

_____

[13] Although plaintiffs contend that *Casey* compared its holding to *Jacobson*, so as to indicate distinction, by introducing the citation with a "cf." signal, AT Br. 18, the Court actually introduced the citation with a "see also" signal, *see Casey*, 505 U.S. at 857, which is used to cite an authority that supports a proposition that was directly supported by already cited authority. Indeed, the lead citation was to *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990), which cited *Jacobson* for the principle that an individual's liberty interest in refusing unwanted medical treatment must be balanced against the State's interest in preventing disease, consistent with the point made in the text that preceded the citation – that a State cannot override individual liberty interests for no reason at all.

Fourteenth Amendment challenges to state laws that do not involve a fundamental right, *see Roman Catholic Diocese*, 141 S. Ct. at 70 (Gorsuch, J, concurring). And even if some tension did exist between *Jacobson* on the one hand, and *Roe/Casey* on the other, *Jacobson* would still govern because it is directly on point and has not been overruled. *See Agostini*, 521 U.S. at 237.

Plaintiffs' further argument that *Klaassen* is inapplicable because it concerned university education instead of public employment, *see* AT Br. 22-23, fares no better. This court has held that, just as there is no fundamental right to graduate education, there is also no fundamental right to follow a particular career. *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 774-75 (7th Cir. 2013). Accordingly, a plaintiff must establish that the defendant's conduct was "arbitrary and irrational" or violated some other constitutional right, like procedural due process, to prevail on a substantive due process claim asserting employment-related rights. *Campos*, 932 F.3d at 975. Plaintiffs' employment status therefore does not distinguish this case from *Klaassen* because employment-based and education-based substantive due process claims both trigger rational basis review.

### 2. EO2021-22 satisfies rational basis review.

EO2021-22 satisfies rational basis review because it is a sound public health initiative that was issued in response to worsening Covid-19 conditions and is well-tailored to the challenges at hand. Although plaintiffs maintain that EO2021-22's testing and vaccination requirements are "problematic" under rational basis review,

21

AT Br. 25, their criticisms, *see id.* at 19-21, 23-26, fall well short of meeting their heavy burden to establish that the requirements are legally irrational.

Rational basis review is "very deferential" and merely requires "a rational relationship between the law and some legitimate governmental purpose." *Valenti v. Lawson*, 889 F.3d 427, 430 (7th Cir. 2018) (internal quotations omitted). It is the "most lenient form of judicial review" and imposes "a notoriously heavy legal lift for the challenger." *Monarch Bev. Co. v. Cook*, 861 F.3d 678, 681 (7th Cir. 2017). This court will uphold a government action under that standard if there is a "'reasonably conceivable state of facts that could provide a rational basis,'" even if that basis did not motivate the challenged act. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). A rational basis may therefore "be based on rational speculation unsupported by evidence or empirical data." *Srail v. Vill. of Lisle*, 588 F.3d 940, 947 (7th Cir. 2009); *see Lopez Ramos v. Barr*, 942 F.3d 376, 381 (7th Cir. 2019) ("Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.") (internal quotations omitted). Rational basis review thus "tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019).

EO2021-22 was issued in response to the escalating spread and severity of Covid-19 as the Delta variant took hold. Doc. 1-1 at 2-3; Doc. 14-1 at 5-7; Doc. 14-2 at 4-5. By then, Covid-19 vaccines had proven safe and effective, and it was clear that

22

testing could be used to identify people who had the virus and were contagious, even before any symptoms appeared. Doc. 1-1 at 3; Doc. 14-1 at 7-13; Doc. 14-2 at 5-10. Accordingly, it was vitally important to ensure that health care workers, who face an increased risk of exposure to Covid-19 and are in contact with vulnerable individuals with underlying conditions and compromised immune systems, were vaccinated, or at least regularly tested for Covid-19. Doc. 1-1 at 3; Doc. 14-1 at 12-13; Doc. 14-2 at 7. Consistent with those rationales, EO2021-22 imposed a vaccine requirement that was targeted at health care workers and provided a testing option for those who declined to receive a vaccine. *See* Doc. 1-1 at 4-5.

Those testing and vaccination requirements satisfy rational basis review under binding precedent. To begin, in *Biden v. Missouri*, the Supreme Court just held that a national vaccine mandate for facilities that receive Medicare and Medicaid funding, which does not contain a testing option, was not arbitrary and capricious. 142 S. Ct. at 653-54; *see also Platt*, 872 F.3d at 852 (noting equivalency of arbitrariness and irrationality). The Court stated that "[v]accination requirements are a common feature of the provision of healthcare in America," pointing out that health care workers are ordinarily required to be vaccinated for multiple diseases, and that the mandate was amply supported by administrative determinations that it was likely to slow the virus's spread and promote the provision of safe and effective medical care. *Biden*, 142 S. Ct. at 651, 653-54. Notably, the dissenting Justices did not disagree with that portion of the majority's decision, and instead would have held that the relevant federal agency lacked the authority to promulgate the rule, while remarking

23

that vaccine mandates "fall squarely within a State's police power." *Id*. at 658 (Thomas, J., dissenting).

In addition, EO2021-22 is less burdensome than the policies that were upheld in *Jacobson* and *Klaassen* because it applies only to health care workers and includes a testing option. *See* Doc. 1-1 at 4-5. The mandate in *Jacobson*, by contrast, applied to all adults without exception, and the requirement in *Klaassen* allowed twice-weekly testing only for those with a medical or religious exemption. *See Klaassen*, 7 F.4th at 592-93. Therefore, when considered against relevant precedent from the Supreme Court and this circuit, EO2021-22 necessarily satisfies rational basis review.

Plaintiffs argue that the executive order lacks a rational basis because it was not issued earlier, Covid-19 vaccines do not promote public health, and the mandate ignores natural immunity. AT Br. 19-21, 23-26. But each of these arguments suffers from multiple flaws.

First, plaintiffs suggest that EO2021-22 was issued too late because health care workers had been doing their jobs without mandatory testing or vaccines before the challenged requirements were enacted. AT Br. 19-20. The Governor, however, explained that the executive order was issued in response to a surge in cases and hospitalizations that was associated with the Delta variant after Covid-19 vaccines had become widely available and proved safe and effective. *See* Doc. 1-1 at 2-3; Doc. 14-1 at 5-7; Doc. 14-2 at 4-5. The timing of EO2021-22 thus makes perfect sense and accords with the Governor's consistent approach of adjusting the State's policies to reflect new facts and conditions as they arise. Plaintiffs' contrary position departs

24

from this court's admonition that state officials must be allowed sufficient flexibility to respond to changing circumstances, *see Cassell*, 990 F.3d at 549-50, as well as the "strong presumption of validity" given to governmental actions under rational basis review, *Alarm Detection Sys. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 874 (7th Cir. 2019).

Second, plaintiffs claim that the premise that EO2021-22 protects public health "is at odds with reality" because vaccines do not prevent the spread of Covid-19. AT Br. 20-21. At the outset, it is worth noting that plaintiffs do not contest the utility of Covid-19 testing, which can identify contagious individuals even before they show any symptoms. *See* Doc. 14-1 at 13. And plaintiffs concede that vaccines have been effective at limiting the severity of Covid-19 infections in breakthrough cases. AT Br. 21 n.25. The order's testing and vaccine requirements thus indisputably protect public health insofar as they help ensure that infected health care workers do not report to work while they are contagious and allow them to recover, and return to work, more quickly, especially when hospital resources are limited due to a surge in Covid-19 cases. *See Biden*, 142 S. Ct. at 651 (noting "staffing shortages caused by COVID-19-related exposures or illness has disrupted patient care").

Plaintiffs' argument, moreover, rests on a few articles that provide little, if any, support for the notion that vaccines have no effect on the spread of Covid-19 and, regardless, are necessarily insufficient to overcome the evidence that defendants submitted in support of the conclusion that the mandates are rationally related to the objective of protecting public health. *See Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d

1047, 1055 (7th Cir. 2018) (evidence in support of rational basis is unnecessary, as a governmental policy choice "is not subject to courtroom fact-finding") (internal quotations omitted).  Indeed, the first article cited, *see* AT Br. 7 n.3, compared infection and vaccination rates of various countries and counties within the United States over a seven-day period and found no discernable relationship between those rates, while noting that the study's data depended on testing availability, reporting practices, and individual willingness to be tested across those jurisdictions.[14]  That seven-day snapshot, which admittedly failed to control for multiple factors, led the authors to conclude that other methods "may need to be put in place alongside increasing vaccination rates," contrary to plaintiffs' assertion, *see id.* at 20, that vaccination rates have no impact on public health.[15]

Another cited article, *see id.* at 9 n.10, also recommended that "[h]igher vaccination coverage rates need to be achieved" while concluding that "vaccination reduces the risk of delta variant infection and also accelerates viral clearance," which suggested that people with breakthrough cases were contagious for a shorter time.[16] So, while there was some evidence indicating that vaccinated and unvaccinated

---

[14]  S.V. Subramanian & Akhil Kumar, *Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States*, 36 EUROPEAN JOURNAL OF EPIDEMIOLOGY, 1237-40, https://link.springer.com/content/pdf/10.1007/s10654-021-00808-7.pdf.

[15]  *Id.* at 1238-39.

[16]  Annelies Wilder-Smith, *What is the vaccine effect on reducing transmission in the context of the SARS-CoV-2 delta variant?*, THE LANCET. INFECTIOUS DISEASES, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8554481/.

people may be roughly as likely to transmit the disease to household contacts after they had been infected, that same study confirmed that vaccinated people were less likely to become infected in the first place and were likely to be contagious for an abbreviated period.[17]

Also, while vaccine efficacy diminishes over time and vaccines are somewhat less effective against the Delta variant than they were against Alpha, they are still highly effective against Delta, especially at preventing severe illness and death, and may be supplemented by a booster. Doc. 14-1 at 5, 7-13; Doc. 14-2 at 4-10. To the extent that plaintiffs touch on the Omicron variant, *see* AT Br. 8-10, 20, 23, 32, its effects were largely unknown when the district court issued its decision and did not factor into the court's assessment of plaintiffs' claims, *see* Doc. 41 at 18-19 n.8 (A51-52), as is evident from plaintiffs' citations to articles that post-date the court's decision, *see id.* at 10-11. In any event, existing data confirms that vaccines reduce the severity of Omicron breakthrough infections and remain effective against other variants, like Delta,[18] and it is reasonable to believe that vaccines will protect against future strains that may develop. The Governor, moreover, submitted declarations by infectious disease specialists who explained why requiring health care workers to undergo weekly testing and/or receive vaccines would help protect public health, with

---

[17] *Id.*

[18] *See* Centers for Disease Control and Prevention, *Effectiveness of a Third Dose of mRNA Vaccines Against COVID-19-Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance – VISION Network, 10 States, August 2021-January 2022*, https://bit.ly/3IXvC30.

citations to supporting authority, *see* Docs. 14-1, 14-2, and plaintiffs' articles fail to conclusively establish that the specialists' views, and the authorities on which they relied, are wrong, *see Monarch Bev. Co.*, 861 F.3d at 681 (to establish irrationality, plaintiff must negate "every conceivable basis" that could support the challenged action).

Third, plaintiffs argue that EO2021-22 lacks a rational basis because it does not contain a natural immunity exception, citing two district court decisions and one Fifth Circuit opinion in support. AT Br. 24-25. But the Supreme Court rejected this argument in *Biden*, when it held that the national Medicare/Medicaid mandate, which contains no such exception, was not arbitrary or capricious. *See* 142 S. Ct. at 653-54. In doing so, the Court directly addressed the two district court decisions on which plaintiffs rely, *see* AT Br. 24-25, which criticized the lack of a natural immunity exception, explaining that those courts had improperly second-guessed the wisdom behind the mandate and exceeded their judicial role, which was to decide whether the mandate was arbitrary. *Biden*, 142 S. Ct. at 653-54.

And although the Court effectively affirmed the Fifth Circuit in *National Federation of Independent Business v. Department of Labor*, 142 S. Ct. 661 (2022) (per curiam), it did so on the basis that the Occupational Safety and Health Administration ("OSHA") lacked the authority to issue a national vaccine mandate covering all employers with at least 100 employees. The Court did not hold that the mandate was arbitrary or irrational, but instead stated that it "[did] not doubt" that OSHA could issue a more limited mandate, *id.* at 665-66, and the concurring opinion

28

emphasized "that state and local authorities possess considerable power to regulate public health," including to pursue "a variety of measures in response to the current pandemic," *id.* at 667 (Gorsuch, J., concurring). The Court's recent decisions on the federal mandates thus confirm that EO2021-22 is neither irrational nor arbitrary, but a valid exercise of state authority to protect public health.

Indeed, even if natural immunity were as effective as vaccine immunity, that would not establish that EO2021-22 was unconstitutional, as rational basis review "tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High Sch.*, 919 F.3d at 1010. In any event, defendants submitted multiple declarations from medical professionals explaining, with supporting authority, that vaccine immunity was superior to natural immunity and that the study plaintiffs had cited to argue the contrary, *see* AT Br. 7, was not peer-reviewed and was methodologically suspect. *See* Doc. 14-1 at 7-12; Doc. 14-2 at 7-10; Doc. 18-1 at 5. EO2021-22, moreover, would be rational even if vaccines and natural immunity provided the same protection from infection because vaccines are safe, reduce the severity of future infections, enhance natural immunity, and can be supplemented through a booster; there is no recognized mechanism for verifying that a person has natural immunity; and, as plaintiffs' cited study found, *see supra* pp. 26-27, vaccines likely reduce the duration of the period in which an infected person is contagious. *See* Doc. 14 at 25-30; Doc. 14-1 at 7-9; Doc. 14-2 at 4-6.

In sum, EO2021-22 is a well-calibrated response to the public health and safety threats that are presented by Covid-19. Such measures "are a common feature

29

of the provision of healthcare in America" and are consistent with other vaccination requirements that health care workers face. *Biden*, 142 S. Ct. at 653. By requiring health care workers to receive a Covid-19 vaccine or, alternatively, undergo weekly testing, the Governor properly exercised his authority, and responsibility, to protect public health, and plaintiffs' criticisms of that decision cannot establish that EO2021-22 is irrational.

**B.  Plaintiffs are unlikely to succeed on the merits of a procedural due process claim.**

The fundamental requirements of procedural due process are notice and an opportunity to be heard. *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Plaintiffs do not argue that the Governor deprived them of either of those constitutional entitlements here. Instead, they maintain that the Governor exceeded his authority under Illinois law when he issued EO2021-22. *See* AT Br. 26-27. But the Eleventh Amendment bars any state claim against the Governor, and plaintiffs have not identified any separate basis for a federal due process claim aside from that alleged violation of state law. In short, plaintiffs' challenge to the Governor's statutory authority to issue EO2021-22 must be brought in state court.

The Eleventh Amendment bars federal courts from deciding state law claims brought against state officials in their official capacity. *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the

Eleventh Amendment"). Here, plaintiffs alleged and argued that EO2021-22 was invalid because the Governor exceeded his authority under the Illinois Emergency Act by issuing it. *See* Doc. 1 at 29-30 (alleging EO2021-22 "exceeds the power of the governor granted to him by Illinois statute" and seeking declaration of same); Doc. 4 at 10 ("The Governor exceeded his authority under Illinois law in enacting Executive Order 2021-22."). Plaintiffs are thus pursuing a state claim against the Governor in his official capacity, which is barred by the Eleventh Amendment. Any such claim must be brought in state court, where other parties have litigated, and are litigating, claims about the scope of the Governor's authority under the Illinois Emergency Act. *See, e.g.*, *Ruble v. Tate-Nadeau*, 2021 IL App (4th) 200641-U; *JL Props. Grp. B, LLC v. Pritzker*, 2021 IL App (3d) 200305; *Landers v. Pritzker*, 2020 IL App (4th) 200356-U; *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623.[19]

In addition, the Governor validly exercised his authority under the Illinois Emergency Act to control "the movement of persons within the [disaster] area, and the occupancy of premises therein," 20 ILCS 3305/7(8), by requiring health care facilities to "exclude" health care workers who did not comply with the testing or vaccination requirements "from the premises," Doc. 1-1 at 5. The Governor was therefore authorized to exclude health care workers who refused to test or vaccinate from health care facilities, where vulnerable individuals with underlying conditions

---

[19] Although plaintiffs stated in their complaint that they were bringing a claim under the Illinois Health Care Right of Conscience Act against all defendants, they did not argue in the district court, *see* Doc. 4 at 13; Doc. 25 at 22, or in their opening brief on appeal, *see* AT Br., that the Governor violated that statute. Regardless, any such claim against the Governor would be barred by the Eleventh Amendment. *See Katz-Crank*, 843 F.3d at 650.

and compromised immune systems are located, by the statute's plain language.  As a result, plaintiffs cannot succeed on their procedural due process claim because it is barred by the Eleventh Amendment and rests on an inaccurate interpretation of the Governor's authority under Illinois law.

### III.    Plaintiffs failed to establish that they would suffer irreparable harm without an injunction or lack an adequate remedy at law.

Plaintiffs have also failed to make the threshold showings that they are likely to suffer irreparable harm without a preliminary injunction against EO2021-22 and lack an adequate remedy at law.  To justify preliminary relief, the plaintiff must show that it would likely, not just possibly, suffer irreparable harm without an injunction, *Orr v. Schicker*, 953 F.3d 490, 501 (7th Cir. 2020), in addition to showing "that traditional legal remedies, i.e., money damages, would be inadequate," *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008).

As to irreparable harm, plaintiffs cite *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004), in support of the proposition that a violation of any constitutional right is irreparable as a matter of law.  *See* AT Br. 14-15.  But that decision merely recognized that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Joelner*, 378 F.3d at 620 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Plaintiffs have cited no authority for the contention that this First Amendment doctrine applies to other constitutional claims as well, and they are not pursuing a First Amendment claim against the Governor.  *See* AT Br. 29-31.  Regardless, plaintiffs will not suffer a

violation of a fundamental right without an injunction because, as explained, they do not have a fundamental right to refuse to be tested or vaccinated for Covid-19. *See supra* pp. 17-21.

Further, plaintiffs have not established that they lack an adequate remedy at law because, while plaintiffs note that, if they were to prevail, a component of their relief would be injunctive, they provide no argument as to why legal remedies would be inadequate to compensate them for any injury they suffered during litigation. *See* AT Br. 15; *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 677-78 (7th Cir. 2009) (arguments not developed in opening brief are "waived"). Indeed, plaintiffs identify no reason why money damages are inadequate to remedy any injuries they might suffer due to weekly testing and, if they were to suffer an adverse employment action for refusing to test, any such injury would be compensable by money damages. *See Adams v. City of Chi.*, 135 F.3d 1150, 1154-55 (7th Cir. 1998).

**IV. Plaintiffs have forfeited any argument about the balance of harms by not presenting it in their opening brief on appeal and, regardless, the district court did not abuse its discretion by finding that the balance weighed against preliminary relief.**

The party seeking a preliminary injunction must not only make the threshold showings of a likelihood of success on the merits, irreparable harm, and the lack of an adequate remedy at law, but also establish that the harm it would suffer without an injunction outweighs the harms to the non-moving party and the public interest if preliminary relief were granted. *Cassell*, 990 F.3d at 544-45. "Given the need for equitable judgment in these matters," the district court's balancing of the harms is reviewed for an abuse of discretion. *Id.* at 544; *see Turnell v. Centimark Corp.*, 796

F.3d 656, 662 (7th Cir. 2015) ("we give substantial deference to the court's weighing of evidence and balancing of the various equitable factors"). Here, the district court weighed the harms to the parties, in view of the public interest, and concluded that the balance of equities counseled against a preliminary injunction. Doc. 41 at 18-19 (A51-52).

Plaintiffs, however, present no argument regarding the balance of harms in their opening brief, and they have thus forfeited any argument as to that issue on appeal. *See Webster v. CDI Ind., LLC*, 917 F.3d 574, 578 (7th Cir. 2019) (appellant forfeits arguments not raised in opening brief). At the very least, by not providing any argument on that step of the analysis, plaintiffs have failed to demonstrate that the district court abused its discretion by finding that the balance of harms, and the public interest in preserving EO2021-22, weighed against a preliminary injunction. The district court, moreover, did not abuse its discretion.

As stated, courts use a "sliding scale approach" when balancing the harms, meaning that the balance must weigh more heavily in the plaintiff's favor when it is less likely to win on the merits, and vice versa. *GEFT Outdoors*, 922 F.3d at 364. When conducting that analysis, courts also evaluate the effect an injunction would have on the public interest. *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 971-72 (7th Cir. 2012). Because plaintiffs are unlikely to succeed on the merits of their claims, they face the burden of showing that the balance of harms weighs heavily in their favor. *See Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 n.2 (7th Cir. 1992) ("It is the balance of harms

34

*discounted* by the parties' relative chances of succeeding on the merits (and taking account of the public interest), not the *undiscounted* balance of harms, that must weigh in plaintiff's favor for a preliminary injunction to issue.") (emphases in original).

EO2021-22 serves the public interest by reducing the likelihood that health care workers will transmit Covid-19 to the people they encounter while at work, who often have underlying conditions and compromised immune systems that leave them especially vulnerable to the virus's worst effects. *See* Doc. 14-1 at 12-13; Doc. 14-2 at 7. It also helps ensure that infected health care workers do not report to work while they are contagious and allows them to recover, and return to work, more quickly. *See* Doc. 14-1 at 13. And the order's testing and vaccination requirements for health care workers were issued pursuant to the Governor's statutory authority to protect the public health during a disaster, *see supra* p. 31, consistent with the "considerable power" state officials possess "to regulate public health" "in response to the current pandemic," *Nat'l Fed'n Indep. Bus.*, 142 S. Ct. at 667 (Gorsuch, J., concurring). As such, a preliminary injunction barring the enforcement of EO2021-22 would not only imperil public health, but it would also offend bedrock principles of federalism by depriving the Governor of his traditional authority to protect the public health during a disaster. On the other side of the ledger, health care workers can choose to receive a vaccine or take a weekly test to comply with the executive order. Plaintiffs have failed to establish that the balance of harms weighs heavily in their favor.

## CONCLUSION

For the foregoing reasons, State Defendant-Appellee Governor Jay Robert Pritzker asks this court to affirm the district court's decision declining to grant a preliminary injunction.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

/s/ Frank H. Bieszczat
**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2090 (office)
(773) 590-7075 (cell)
Frank.Bieszczat@ilag.gov

Attorneys for Defendant-Appellee
Governor Jay Robert Pritzker

February 22, 2022

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(A) in that the brief contains 9,627 words.

/s/ Frank H. Bieszczat
**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2090 (office)
(773) 590-7075 (cell)
Frank.Bieszczat@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 22, 2022, I electronically filed the foregoing Brief of Defendant-Appellee Governor Jay Robert Pritzker with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are CM/ECF users and will be served by the CM/ECF system.

Jonathan Lubin
jonathan@lubinlegal.com

William R. Pokorny
wrp@franczek.com

Michael A. Warner Jr.
maw@franczek.com

/s/ Frank H. Bieszczat
**FRANK H. BIESZCZAT**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2090 (office)
(773) 590-7075 (cell)
Frank.Bieszczat@ilag.gov